All right. Thank you. Good morning, Your Honor. Stephen Lubliner on behalf of repellent Jeremy Donagal. I hope to save one minute for rebuttal. I have two plain error guideline computation, offense-level computation sentencing errors to talk about this morning. Most of the plain error prongs are undisputed. The only issue really in dispute is the plain error itself, whether there was clearly erroneous fact-finding, plainly clearly erroneous fact-finding, whether the record lacks substantial evidence to have permitted a finding by a preponderance of the evidence supporting the offense levels. I have, as I said, the two arguments. I'm going to take the second issue in the briefs first, the leadership enhancement, the two-level upward adjustment for supervision and management, because I think that issue is, the error there is, to use a different legal term, super plain. The government's case and position in support of the offense-level increase boils down to he had a guy, there was a dude, and the guy did some stuff that was useful to Mr. Donagal in his criminal enterprise, and that is necessary but not sufficient. The guideline, the comment to the guideline, all the cases you need a criminally responsible participant. You need someone with knowledge of the criminal purpose and an intent to assist the defendant's criminal purpose. You do not get the enhancement for a mere unknowing facilitator. And what's the standard on which we judge whether the helper, I'll call it the assistant, satisfies that standard? Well, I think the standard at the district court would have been by a preponderance of the evidence. The standard on typical appellate review is whether the record contains enough evidence that would have logically, rationally permitted a finding by a preponderance of the evidence. And obviously we don't need a conviction of the helper. No, you don't need a conviction of the helper. You don't need the helper to be charged. You don't need the helper's knowing criminality to rise to the precise level of the defendant's knowing criminality. So if the PSR specifically mentions that the defendant hired an employee to assist in packaging and distributing the counterfeit drugs and that finding was adopted by the district court and not objected to, is that enough to reasonably infer that the helper was knowingly helping in this packaging of the counterfeit substances? I don't think that is, Your Honor. I think that's conclusory language. It wasn't objected to, and that's why we're on plain error review. As in so many plain error cases, I think counsel made a mistake, at least based on the cold record of the PSR, in not objecting to that. We know he had someone. We know packaging and distribution. We know Mr. Donegal had his own personal criminal enterprise. But I think it's also clear that all the guy was actually doing was stuffing envelopes and probably throwing them in a bin for Mr. Donegal to take on his many UPS or FedEx or post office runs. We do also know that the warehouse had laboratory equipment. In the packaging of these counterfeit substances, there was a business card for the dark web and a message, you know, F.U. Big Pharma. Why collectively couldn't we infer that this helper knew he was involved in a criminal enterprise in the course of packaging and distributing these substances? Mr. Donegal's lease with the landlord who rented him the warehouse was for a dietary supplements business. The government does not draw any distinctions between what an entrepreneurial, legitimate dietary supplements business, which is sort of inevitably going to be kind of F.U. Big Pharma, would look like that this one somehow didn't. There's going to be manufacturing equipment. There's going to be distribution equipment. Do dietary supplements typically get sold on the dark net, on the dark web? I don't know that we know that there's enough to infer that the guy knew where this stuff was being sold. I don't think there's anything to support that kind of inference. And it's interesting. There's tons of information in the PSR about what Mr. Donegal was doing over the course of many months. And then you get to the last paragraph, and it talks about, oh, and he had a guy. There was the illegal alien who was helping him with stuffing envelopes. And a search warrant was served. And it says the search warrant turned up documents and cell phones and prepaid visa cards. And I think, oh, I have documents, but documents can be bad. What were the documents? You never find out. Cell phones. Do we know how long the helper was employed by Mr. Donegal? We don't know how long the helper was employed. I don't know that that matters one way or the other. The duties do not appear to have changed as far as the pre-sentence report informs us. He was assisting with manufacturing and not manufacturing, with packaging and distribution, which means from everything we know about the operation, he was stuffing envelopes and throwing them in a bin. If different jurors can draw different sorts of inferences from the record, is that enough to say that you can't overcome the plain error standard of review? I think you have to draw a distinction, Your Honor, between really drawing inferences from the record and speculating from the record on what might have happened that the government did not know or did not educate the court about. We have the Lewis case with the lady in the casino that I cite, and you could speculate that maybe she told the girls who helped her, oh, and I bought all this stuff with stolen credit cards. Isn't that exciting? But that's not evidence in the record. The girls had their suspicion. They went and did it anyway, and the court in that case said that is not enough to get you the offense-level enhancement. So speculating, is it possible that the guy knew what Mr. Donegal was doing? Of course. Is it possible they had a conversation about what Mr. Donegal was doing? Of course. But nothing about the evidence we have rationally compels that influence. The guy was essentially a labor-saving device. He was a machine. He was an envelope stuffer. The Sentencing Commission sometimes gives you offense-level bumps for inanimate objects that facilitate what you're doing, firearms being a prime example. They could have written a guideline that said if you got a guy, whether he knows what's going on or not, you get the offense-level bump. They could have done all sorts of things that said, well, if you make it easier on yourself, you get the offense-level bump. Didn't do that. We have very specific, unanimous case law, which the government doesn't dispute, that the defendant has to knowing, know of the criminal, the employee has to know of the criminal purpose and intend to assist it. And if he doesn't know what's going on and the government doesn't overcome that inference of what's going on, you don't get the offense-level increase. Counsel, could you entertain a question, please? I'm sorry. I understand specifically what you said, but we have a standard that we have to imply, and that is in this case, as I understand it, this is a plain-air standard because no objection was raised before the district court. Your argument would go, I think, more persuasively if you weren't under the plain-air standard, but under a general review. Taking the plain-air standard, how would you argue your case? Would you argue it differently than you just did? Because clearly the district court did not receive an objection on these, was not able to make any changes, so we have to find plain-air standards. How would your argument be different if you applied the plain-air standard that we must apply? Well, Your Honor, I don't think there's a meaningful difference between review for lack of substantial evidence or review for clearly erroneous fact-finding and the plain-air standard. What case do you rely on for that? I have cases that were undisputed generally that say that substantial evidence review or sentencing decisions are subject to review for plain error. I have a case in the reply brief that says that. Lack of substantial evidence grounds for plain-error review. But your argument is basically that reading that PSR, it should have jumped out to the district judge that there really wasn't enough here to show that the helper was engaged knowingly in criminal activity. Yes, Your Honor. I think the district court judge should have said, well, what did the guy know? What did he, besides stuffing envelopes, besides being a machine, what did he know and what did he intend to do? Yeah. I mean, that's the argument. Yeah. And I want to briefly touch on the first argument I have about the 2D1.12, the difference between A versus B. Again, it is undisputed in this case that Mr. Donegal never intended to manufacture controlled substances. That's the government's theory about why he's such a bad guy. The 12-level offense level clearly doesn't apply. The government should be given the benefit of its case theory. They can argue on remand for 28 months and an upward departure, but the problem I have with this argument, though, is that you agree that that is the most applicable sentencing guideline, at least the most analogous one, and both A1 and A2 discuss controlled substances. The difference is with the mental state, whether it was intending to manufacture a controlled substance or in here substitute a counterfeit substance or reasonable cause to believe. And aren't the circumstances here of Mr. Donegal's intentionality clear from his plea statements? They are clear as far as count two goes and making the manufacturing of counterfeit drugs. And I think it's important that we have to kind of funnel down when we're looking at the guideline that we're applying. The application of the guideline is not in dispute itself. The question is what was admitted to that gets you that three-level offense level bump from 9 to 12. And what you have to find is intention to manufacture a controlled substance. This case was scrupulously, evilly, according to the government, not about controlled substances, and I think that's the distinction that the Court should focus on. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Molly Smolin for the United States. This Court should affirm the District Court's application of the sentencing guidelines for two reasons. First, it was not plain error for the District Court to apply the leadership enhancement under Section 3B1.1c because the record did establish that Donegal hired and managed an employee who assisted in the packaging and distribution of his counterfeit drugs. So what do we have to know about that employee's state of mind? I understand it's undisputed that he hired this person, but what do we need to know or what do we need to be able to infer about the state of mind of the employee? Your Honor, the law requires that the employee have been a knowing criminal participant, and the evidence before the District Court was more than sufficient for the Court to find that it was more likely than not under these circumstances. So could you review that evidence, then? Yes, Your Honor. The uncontroverted evidence in the PSR was that Donegal had hired this employee, Romero Luna, for the purpose of helping him package and distribute his counterfeit drugs and that he exercised a managerial role over him during that process. Yeah, that part's easy, right? Yes, Your Honor. But the remainder of the evidence that was before the District Court makes it entirely unreasonable that this employee was anything but a knowing criminal participant. This was a shady operation that was being run out of a random warehouse in Concord, California. The evidence was that there were only two people working there, Donegal and the employee that he was managing. There's no evidence that Donegal hid anything about this illegal pill mill he was running from the employee. Now, what's the employee know as the employee is packaging and shipping these drugs? What does the employee know, Your Honor? Yeah, I'm trying to figure it out. So far, I'm not there yet. If I'm not reviewing this on plain error, I don't think there's enough. Plain error is, of course, harder, and you've got an advantage on that point. But help me out. What else do we have in the record that lets us believe or conclude that it's more likely than not that the employee knew? There's descriptions in the PSR that was before the District Court. This would be in paragraphs 8 and 11. It describes the equipment that was in that warehouse where these two men were working. And unlike the landlord that opposing counsel brought up, who presumably only knew from the lease agreement that this was supposed to be premises for packaging and distributing dietary supplements, the employee saw, presumably, and the District Court could find more likely than not that the employee saw all of this equipment, the punches and dyes, the pill-filling, pill-pressing machines. But so far this argument is, well, the lease says this, but he's doing something other than what's on the lease. I rather doubt that the employee read the lease. That's correct, Your Honor. I'm drawing that comparison only because opposing counsel made the argument to Your Honors that this employee was on the same footing as the landlord. He wasn't. He was there in the warehouse touching the things that were the very object of this illegal scheme, packaging these drugs and helping Donegal distribute them. But how do we – how can we infer that he knew that these were counterfeit drugs? I mean, if you're an expert on drugs, you can figure this out. I doubt he was. Your Honor, the law doesn't require that the employee have the same level of criminal liability as Donegal. It's sufficient, as this Court held in United States v. Smith, that the employee was an accessory, that he aided and abetted Donegal. And for that, all that's necessary is that he aided with respect to at least one element of Donegal's crimes with the intent to facilitate and before the crime was completed. But knowing that it's criminal? Yes, Your Honor. Right. Yeah. So I'm still having trouble with whether he knew it was criminal. He's packaging up pills. He knows from the equipment that the pills are being, I guess, at least formulated in that facility. But what do we have that would allow him to infer that these are – these pills are illegal? I mean, this isn't marijuana. We don't have – this is not a meth lab. I mean, these are just pills. Yes, Your Honor. It's the totality of the evidence here, because contrary to what opposing counsel has suggested, it's not necessary that the district court have found or that this court find that there's no possibility that the employee might have thought that this was a legitimate operation. It's the standard the district court was to apply was whether, based on the evidence before the court, it was more likely than not that the employee knew that this was criminal activity. And some of the pills were stamped with the commercial label for Xanax? They were stamped GG249, which is the label that has been granted by the FDA for use with Xanax pills. And presumably, if the packaging includes those business cards that says, you know, DNA Alchemist, we're selling this on the dark web, and, you know, FU Big Pharma, those – are those – is that what you meant by that this is a shady operation where this is occurring? Is that something that the district court could read into to infer that this helper had knowledge of a criminal enterprise? I suppose that that's possible, Your Honor, but I don't think the district court needed to go that far to find that it was more likely than not that Romero Luna knew that this was criminal activity he was assisting in. I think that the evidence in the PSR about just the nature of what was seen within that warehouse, that this was the circumstances in which this employee was working and the uncontroverted evidence that Donegal had hired him for this purpose and was managing him was enough for the district court to find that it was more likely than not that he was a knowing criminal participant, and that was not plain error. If I may turn to my second point, the district court also did not plainly err in applying Section 2D1.12a.1 because Donegal admitted that he intended to and did use his drug-making equipment to manufacture counterfeit drugs. And given Donegal's repeated admissions, it simply wasn't plain error for the district court to find that subsection a.1 was the appropriate subsection to apply here. And the question here, because this was an analogous guideline that Donegal concedes was the appropriate one under 2X5.1, it's not whether either subsection fits perfectly. It's whether it was plain error for the district court to choose to apply the one that fit better. And here that's a.1 because the only difference between those subsections is the mens rea, that intent that Donegal repeatedly admitted that he had to manufacture counterfeit drugs. That's in the record at Excerpts of Record 87 and 88. There's a colloquy with the district court where Donegal is asked what his purpose was. Was it to manufacture counterfeit drugs? Did he use the equipment to manufacture counterfeit drugs? And to every question, Donegal responded affirmatively, yes, he did. A.2 is actually the worst fit here, and it was not clear or obvious error for the district court to choose the subsection that fit better. Unless the court has further questions, the government will submit on its briefs. I have no other questions. I'll ask my colleagues. I'm fine. I'm fine. Thank you. Thank you. Thank you, Your Honor. Just very briefly, I did want to point out in answer to Judge Kagan on page 5 of my reply brief, I cite the Buscio-Cabrales case proposition, this court can review for plain error whether substantial evidence supported a sentencing enhancement under the guidelines. The substantial evidence review is whether any reasonable fact finder could find the fact in dispute in light of the evidence in the record, and I submit in this case no reasonable fact finder could find the disputed facts based on the record, particularly, as I say, with regard to the upward adjustment for leadership. Thank you.
judges: WALLACE, FLETCHER, SANCHEZ